HOBBS STRAUS DEAN & WALKER

1899 L Street, NW, Suite 1200
Washington, DC 20036

T 202.822.8282
F 202.296.8834

HOBBSSTRAUS.COM

September 17, 2026

**Via CM/ECF and Email**

The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312
ChambersNYSDMcMahon@nysd.uscourts.gov

RE: *Ludlow Exchange, LLC d/b/a Novig v. James et al.*, Case No. 1:26-cv-06676-UA

Dear Judge McMahon:

I write as counsel for a group of 24 individual federally recognized Indian tribes and tribal organizations (collectively, the "Tribal Amici"[1]) to respectfully request the Court's permission to file an *amicus curiae* brief in support of Defendants' opposition to Ludlow Exchange, LLC's ("Novig") motion for a preliminary injunction in the above-referenced action. A copy of the Tribal Amici's *amicus curiae* brief is attached hereto as Exhibit A. Counsel for both Plaintiffs and Defendants take no position with respect to the filing of this brief.

## I. Tribal Amici's Interest

IGA is an inter-tribal non-profit organization comprised of 124 federally recognized Indian Tribes that operate gaming enterprises throughout Indian Country. IGA also has non-voting members, which represent organizations, tribes, and businesses engaged in tribal gaming enterprises around the country. IGA's mission is to advance tribal economic, social, and political interests, and to preserve and promote tribal sovereignty, self-sufficiency, and economic development by advocating for tribally owned governmental gaming enterprises. To pursue this mission, IGA operates as an educational and public-policy resource for tribes, policy makers, and members of the public concerning Indian gaming issues and tribal community development.

NCAI is the oldest and largest national organization comprised of American Indian and Alaska Native tribal governments and their citizens. Since 1944, NCAI has advised and educated the public, tribal nations, state governments, and the federal government on a broad range of issues

[1] The Amici Tribes include: Agua Caliente Band of Cahuilla Indians; Bay Mills Indian Community; Elk Valley Rancheria; Hannahville Indian Community; Iowa Tribe of Oklahoma; Jamestown S'Klallam Tribe; Kickapoo Traditional Tribe of Texas; Lytton Rancheria; Mashantucket Pequot Tribal Nation; Mohegan Tribe of Indians of Connecticut; Morongo Band of Mission Indians; Oneida Nation; Pechanga Band of Indians; Pueblo of Acoma; Pueblo of Sandia; Rincon Band of Luiseño Mission Indians; Santa Ynez Band of Chumash Mission Indians; Seminole Tribe of Florida; Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract); Spokane Tribe of the Spokane Reservation; Table Mountain Rancheria; Wilton Rancheria; Yavapai-Apache Nation; and Yuhaaviatam of San Manuel Nation.

involving tribal sovereignty, self-government, treaty rights, and policies affecting tribal nations, including jurisdiction, taxation, and gaming issues. NCAI currently represents more than 275 tribal nations. NCAI works daily to strengthen the ability of tribal nations to ensure the health and welfare of their communities.

WIGA is a non-profit organization of tribal government leaders representing 23 federally recognized Indian tribes in the State of Washington. WIGA's purpose is to educate and disseminate information to the Indian gaming community, federal and state governments, and the general public concerning issues related to gaming in Indian Country. WIGA advocates on behalf of Washington's Indian gaming community to promote government relations and effective communication between tribes and the State. WIGA aims to promote, protect, and preserve the general welfare of Indian tribes through the development of sound policies and practices with respect to the conduct of gaming activities in Indian Country.

AIGA is a non-profit association comprised of eight federally recognized Tribes. AIGA is committed to protecting and promoting the welfare of tribes striving for self-reliance by supporting tribal gaming enterprises on Arizona Indian lands. AIGA provides educational, legislative, and public policy resources for tribes, policymakers, and the public on Indian gaming issues and tribal community development. AIGA is deeply committed to maintaining and protecting tribal sovereignty and self-governance.

CNIGA is a non-profit organization that represents 54 federally recognized tribal governments located within the State of California. CNIGA acts as a planning and coordinating agency for legislative, policy, legal, and communications efforts on behalf of its members, especially with respect to gaming-related matters.

OIGA is a not-for-profit voluntary association comprised of 25 member federally recognized tribes located in the State of Oklahoma which conduct and regulate gaming on their Indian lands pursuant to sovereign tribal authority, federal law, and, with respect to IGRA class III gaming, the Oklahoma Model Tribal Gaming Compact. The mission of OIGA is to promote the general welfare of federally recognized Indian Tribes in Oklahoma through the development of sound policies and practices with respect to the conduct of gaming enterprises in Indian Country.

USET SPF is a non-profit, inter-tribal organization advocating on behalf of 33 federally recognized tribal nations from the Northeastern Woodlands to the Everglades and across the Gulf of Mexico. USET SPF is dedicated to promoting, protecting, and advancing the inherent sovereign rights and authorities of tribal nations and in assisting its membership in dealing effectively with public policy issues. USET SPF works at the regional and national level to educate federal, state, and local governments about the unique historic and political status of its member Tribal Nations.

The Amici Tribes are 25 federally recognized Indian Tribes within the meaning of the Indian Gaming Regulatory Act ("IGRA"). *See* 25 U.S.C. § 2703(5). Each of the Amici Tribes is a separate and distinct tribal government with the sovereign authority to conduct and regulate gaming activities on its Indian lands. The Amici Tribes all have a direct and immediate interest in maintaining their sovereign rights over gaming, including sports betting, on their Indian lands.

Together, the Tribal Amici all have a shared, strong interest in this case because of its potential to have a significant impact on their rights or the rights of their members tribes regarding gaming on Indian lands, as well as Indian gaming and tribal governmental revenue as a whole. Such revenue is vital and provides funding for essential government services, tribal programs, and economic development needed to reach the goals of self-governance and self-sufficiency.

## II. Argument

The Local Rules for this Court do not provide the procedures for or address the propriety of *amicus* briefs. *See generally* Local Rules of the United States District Court for the Southern and Eastern Districts of New York (Jan. 2, 2025). That said, district courts have "broad discretion to permit or deny the appearance of *amici curiae* in a given case," *United States v. Yaroshenko*, 86 F. Supp. 3d 289, 290 (S.D.N.Y. 2015) (citation modified), and courts in this district have frequently permitted amici to participate in its proceedings. *See*, *e.g.*, *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-cv-10832-AT, 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021); *C & A Carbone, Inc. v. Cnty. of Rockland*, No. 08-cv-6459-ER, 2014 WL 1202699, at *3 (S.D.N.Y. Mar. 24, 2014). "An *amicus* brief should normally be allowed when . . . the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11-cv-6746-RJH, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) (citation modified). "The court is most likely to grant leave to appear as an *amicus curiae* in cases involving matters of the public interest." *Andersen v. Leavitt*, No. 03-cv-6115-DRH-ARL, 2007 WL 2343672, at *2 (E.D.N.Y. Aug. 13, 2007). A request for leave to file an amicus brief is also timely "if the filing of an amicus brief would [not] cause a prolonged delay in the litigation." *Goldstein v. Hochul*, No. 22-cv-8300-VSB, 2022 WL 22915988, at *1 (S.D.N.Y. Oct. 19, 2022) (citation modified).

Here, the proposed *amicus* brief is both timely and useful, and will aid the court in its deliberation of this matter by offering insights not available from the parties. First, this letter and the accompanying *amicus* brief are timely because they are filed within seven days of the filing of Defendants' response to Novig's motion for preliminary injunction. This is in accordance with Rule 29 of the Federal Rules of Appellate Procedure, which this Court has previously adhered to in the context of amicus brief filings. *See, e.g.*, *Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12-cv-7935-ALC-HBP, 2014 WL 265784, at *1–*2 ("the Court looks to the Federal Rules of Appellate Procedure, which does provide a rule for the filing of an *amicus* brief" (italics in original)). Additionally, it appears that no substantive ruling from this Court has established a specific amicus brief filing deadline.[2] *See Onondaga Indian Nation v. New York*, No. 97-cv-445, 1995 WL 369389, at *2 (N.D.N.Y. June 25, 1995) ("There is no governing standard, rule, or statute prescribing the procedure for obtaining leave to file an amicus brief in the [United States District Court for the Southern and Eastern Districts of New York]." (citation modified)); *see also Yaroshenko*, 86 F. Supp. 3d. at 290 (amicus brief untimely after 10 months); *Peterson Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-cv-2739-LAP, 2022 WL 3536117, at *1 (S.D.N.Y. Aug. 18, 2022) (amicus brief untimely after six weeks).

---

[2] In addition, counsel for both parties have expressed that they take no position on the filing of this motion and the accompanying brief.

Second, the proposed *amicus* brief is useful and aids this Court in its deliberation because it provides the Court with legal arguments and relevant context not raised by either party. In their response to Novig's motion for preliminary injunction, Defendants argue that the Commodity Exchange Act ("CEA") does not preempt New York's state gaming laws. Defs.' Opp. to Mot. for Prelim. Inj. at 20–30, ECF No. 53. While the Tribal Amici concur with and support the arguments advanced by Defendants, the arguments advanced in the proposed *amicus* brief present additional grounds as to why the CEA does not exclusively govern Novig's sports-event contracts. The Court's decision in this matter will also impact tribes nationwide, including those in New York. Novig's arguments in this case, if taken as true, would necessarily mean that the CEA preempts or impliedly repeals IGRA. *See* Pl.'s Compl. for Decl. and Inj. Relief at 14–19, ECF No. 3. Such a holding would unquestionably impact tribes and the tribal gaming industry as a whole. Additionally, Novig argues that if it is not allowed to provide "impartial access" to its "nationwide exchange," such as by limiting where it can offer its sports-event contracts, it will violate CFTC Core Principles requiring such impartial access. *See id.* at 36–37 (citing 17 C.F.R. § 38.151(b), (b)(1)). If taken to its logical conclusion, a decision in Novig's favor would mean Novig's users must have unfettered access to the sports bets it offers across the United States, including on tribes' Indian lands in New York and across the nation.

As such, the Tribal Amici have a unique interest in the subject matter of this suit because it directly impacts tribal sovereignty and, specifically, tribes' sovereign regulatory authority over gaming that occurs on their Indian lands, which is an important interest, as reflected by the congressional purposes of IGRA. Consequently, the Tribal Amici's proposed brief adds a valuable perspective for the Court not advanced by either party.

## III. Conclusion

For the foregoing reasons, the Tribal Amici respectfully request that this Court grant its motion for leave to file in this case the *amicus* brief attached as Exhibit A hereto.

Sincerely,

/s/ Joseph H. Webster
Joseph H. Webster (pro hac vice pending)
HOBBS, STRAUS, DEAN & WALKER LLP
1899 L Street NW, Ste. 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com

cc (by ECF and email): All counsel of record
Elizabeth A. Bower
Alexandra K. Holden
Scott Crowell
Michael Hoenig